

# SECTION THREE

## Commercial Information

## RAS Systems

## MULTIBEND CENTER
## 79.26

This section will show the specific components that are being proposed in this offering. If you have read about an item in the introduction or techncial section of this proposal and you would like more information or to have it included in your offering, we will be happy to do so. Please call us and request the item and we will adjust the pricing accordingly.

May 21, 2003

RAS SYSTEMS, LLC
1135 Dividend Court
Peachtree City, GA  30269

Telephone (770) 487-7300 • Fax (770) 487-1007



| | | **Part Number** |
|---|---|---|
| 1 | **CNC-MULTIBEND-CENTER RAS 79.26**<br>including manual loading station, Magic-Eye scanner, loading manipulator, main manipulator, folding cell, sheet support system, tool seat, automatic corner piece activator, double band run-out, parts balancer, CNC-control "MULTIBEND 9001" | 80 7926 00 |
| 1 | **Upper Beam Tool Set** | 181 677 |
| 1 | **Folding Beam Tool Set** | 181 678 |
| 1 | **Roto-foot Corner Piece 30 mm (1.18")**<br>The machine is standard with one roto-foot corner piece for the upper beam. | 176 800 |
| 1 | **Blank Loading Gripper System**<br>Machine is quoted with an automatic blank loading system. Five pneumatic grippers, automatic double sheet control and one pop-up gripper, are standard. (Included on the "pass through" system.) | 187 501 |
| 1 | **Tab Tool Set**<br>Right and left tab tool 3.94" in width for bending welding tabs (only available with tool changer) | 175 597 |
| 1 | **Automatic Folding Beam Elbow Tool**<br>7.87" for bends inside of the part | 178 185 |
| 1 | **Magic Wand**<br>For activating the automatic folding beam elbow tool (only available together with the tool changer) | 176 825 |
| 1 | **Automatic Tool Changer**<br>Machine is complete with two gripper arms for fully automatic adjustment of the upper beam tool length. | 181 679 |
| 1 | **Buffer Station**<br>(for unload side). Brushes reduce the speed of the sliding part. | 176 830 |
| 1 | **Phone Modem (service)** | **Standard** |
| 1 | *Aircon System*<br>*for control cabinet* | *183 722* |

**MULTIBEND BASE PRICE**................................................................................$838,770

**MOTOMAN ROBOT FOUR-STATION LOADER**..........................................$120,000

**DISCOUNT**.........................................................................................................$50,000

**NET PRICE**.......................................................................................................$908,770

Proposal #1619 — American Dryer



User software programs can be made and delivered by RAS Systems per request and will be completed on a per diem charge.

Prior to delivery, each machine will be subject to the RAS quality and function test; you'll receive this as a certificate of acceptance.

**Operation Voltage: 440V/60 Cy/3 ph**
- Extra price for special voltage on request.
  Please indicate the required operation voltage clearly in your return of installation manual.
- Motors tropicalized and insulated according to class B.
- Ambient temperatures of more than + 40°C may require special execution.

| | |
|---|---|
| Terms: | FOB Peachtree City, Georgia |
| Delivery: | November, December 2003 |
| Payment: | 1/3 after receipt of order confirmation<br>1/3 at shipment from RAS Factory<br>Balance at completion of install<br>Price does not include any local, state, or federal taxes |
| Warranty: | RAS Systems will provide for a period of two years from delivery to the end user for all of its machines, machine parts, tools, spare parts and accessories. The warranty covering the first MULTIbend will be extended to coincide with the new machine warranty period. |
| Documents: | Brochure<br>Drawings |

We trust that the above information meets with your approval. We will be in contact with you in the very near future to answer any and all of your questions. In the meantime, should you need additional information we are at your disposal.

Very best regards,

RAS Systems, LLC



Ron Pegg,
President

## TERMS AND CONDITIONS

The following terms and conditions shall apply to any sale of goods or services by RAS SYSTEMS, LLC (hereinafter referred to as "Seller"). If this document is construed as an offer, the offer expressly limits acceptance to the terms of the offer contained herein and constitutes notice of objection to any additional or different terms in the acceptance so as to preclude the inclusion of any different or additional terms in any resulting contract. If this document is construed as acceptance, this acceptance expressly conditions such acceptance on the Buyer's assent to any additional or different terms contained herein. If these terms and conditions are not acceptable, Buyer must notify Seller immediately in writing. If Buyer does not so notify Seller immediately, Buyer's acceptance of delivery will constitute conclusive evidence of Buyer's assent to the additional or different terms and conditions contained herein. If for whatever reason Buyer shall be deemed not to have assented to the additional or different terms and conditions set forth herein, this conditional acceptance shall constitute a counter offer, acceptance of whose terms shall be conclusively presumed by Buyer's acceptance of delivery. If this document is construed as a confirmation of an existing contract, such confirmation is expressly conditional on Buyer's assent to any additional or different terms contained herein. If this document is a price quotation, the price quoted may be changed by Seller on written notice to Buyer and in no event shall be binding more than 30 days from the date of quotation. Any resulting contract of sale between Buyer and Seller is referred to herein as "Agreement".

1. **PRICES AND PAYMENT TERMS:** All prices are FOB Seller's place of business Peachtree City, Georgia and unless otherwise agreed in writing, are payable 30 percent upon order placement by Buyer, 40 percent upon notification from Seller that the goods are ready for dispatch, and 30 percent on the earlier of the date of installation of the goods or 60 days following the date of dispatch. All accounts not paid within thirty (30) days of the due date will bear interest at the rate of one and one-half (1-1/2%) percent per month from invoice date. In the event of failure of timely payment by Buyer, Buyer shall pay to Seller all costs of collection including reasonable attorney's fees.

Prices on the goods are exclusive of all city, state, and federal and/or taxes, including, without limitation, taxes on manufacture, sales, receipts, gross income, occupation, use and similar taxes relating to the sale or use of the goods. Wherever applicable, any tax or taxes will be added to the invoice as a separate charge to be paid by Buyer, or in lieu thereof Buyer shall provide to Seller a tax exemption certificate acceptable to the taxing authorities. In addition to the purchase price for the goods Buyer shall pay and be liable for all of Buyer's expenses incurred by Seller for insurance, storage, warehousing, and all other charges in connection with delivering the goods to the Buyer.

Buyer shall pay all amounts payable to Seller hereunder when due, time being of the essence. Payment for the goods shall, if Seller so requires, be made in full prior to delivery and Seller shall be entitled to withhold delivery until such payment has been made and any check or other negotiable instrument given in payment has cleared. Seller shall have the additional right at any time to limit or cancel any credit extended or to be extended hereunder. Upon failure by Buyer to make payment to Seller within ten (10) days after notice from Seller limiting or cancelling any credit extended or requiring Buyer to make payment before delivery Seller shall have the option to cancel this and other contracts between seller an Buyer. In such an event, in addition to its other remedies, Seller may resell all or any part of the goods undelivered under contract without notice at public or private sale and Buyer shall be liable to Seller for the difference between the resale price and the price at which Buyer agreed to buy the goods together with incidental damages.

2. **TITLE TO AND RESERVATION OF SECURITY INTEREST IN THE GOODS:** Until Buyer has completed payment for the goods, title and ownership to said goods shall remain with Seller and its assigns, and Seller hereby reserves and Buyer hereby grants to Seller a purchase money security interest in the goods. The goods shall at all times be located at the place to which delivery is to be made as indicated in the Agreement unless written approval is obtained from Seller for removal to some other place. Said goods shall not become a part of the realty.

If the Buyer defaults in the payment of any part of the purchase price as herein provided at any maturity date as to any payment or fails to comply with or defaults in any of the material provisions of the Agreement, or in the event that a petition for a receiver or in reorganization or in bankruptcy is filed by or against Buyer, or whenever Seller or its assigns shall deem themselves insecure then in any such event the full amount of the purchase price remaining unpaid shall become immediately due and payable at the option of the Seller to its assigns, and Buyer agrees to return said goods on demand, and Seller or its assigns may without notice or demand and without any legal process enter into a premises where the goods are located to take immediate possession thereof and to make such disposition deemed by Seller or its assigns as desirable. All payment shall be retained as liquidated damages for the use of the goods and not a penalty. The goods may be sold with or without notice at public or private sale, with the right of Seller or its assigns to bid in such sale, and the proceeds thereof less expenses shall be credited to the amount unpaid. Buyer agrees to pay the balance forthwith as liquidated damages for the breach of the Agreement.

Until payment for the goods has been completed, Buyer may not sell, transfer, convey, pledge, hypothecate or otherwise use the goods as security for any borrowing or for any other purpose.

3. **INSURANCE:** Buyer shall specifically insure the goods against "all risks" subject to normal exclusions, from the time that the risk of loss passes to Buyer during transit, during unloading, and continuously thereafter until all amounts payable by Buyer are paid in full to Seller for no less than the total amount owing to Seller, with loss firm payable to Seller, as its interests may appear. Evidence of such insurance satisfactory to Seller shall be submitted by Buyer prior to shipment or Seller may procure such insurance at Buyer's expense.

4. **CANCELLATION:** Seller reserves the right to cancel any order previously accepted upon notification to Buyer and return any deposit previously paid, which return shall be Seller's sole liability to Buyer with respect to such cancellation. If Buyer cancels an order accepted by Seller, Buyer shall pay to Seller a cancellation charge equal to the sum of (a) all expenses incurred by Seller prior to the date of written notification of such cancellation, including without limitation direct and indirect expenses, and (b) 30 percent of the price for the goods.

5. **WARRANTY:** Seller warrants the goods delivered hereunder to be free from defect in material and workmanship for a period of one year after installation (or six months if such goods are used in double shift). The above warranty shall not apply to, and Seller shall have no obligation with respect to, any alleged defect arising from, caused by, related to, or with respect to which (as appropriate):
   1. Any alteration, additions or attachment to or modification of the goods as authorized in advance in writing by Seller that interferes with the normal and satisfactory operation or maintenance of the goods;
   2. Movement of the goods (or portion thereof) after installation without the prior written consent of Seller;
   3. Electrical work external to the goods;
   4. Noncompliance with environmental specifications relative to proper utilization of the goods;
   5. Any special equipment ordered by Buyer that is not manufactured or designed in accordance with the Seller product brochure and/or Seller product list;
   6. Consumable goods;
   7. Any portion of the goods that is not manufactured by Seller;
   8. Any cause other than normal wear and tear to the goods, including without limitation neglect, misuse, repair or maintenance by any party other than Seller not authorized in advance by Seller, accidents, failure of electrical power, air conditioning, humidity control, or acts not within the reasonable control of Seller; or
   9. Any defect that is visible or discernable through reasonable diligent inspection (any such defect having been subject to Buyer's prior right of rejection or non-acceptance) (hereinafter referred to as "Warranty" - The Warranty also applies for a period of six (6) months to repaired or replaced parts, except that the maximum Warranty period for such parts shall be no longer than one year from shipment of the initially defective part.

6. **LIMITATION OF WARRANTY.**
All specifications, performance figures, drawings, and particulars of weights and dimensions made available by Seller are approximate only and the descriptions and illustrations contained in Seller's catalogs, price lists, or sales material are intended only to present a general idea of their subject matter, and none of the items referred to above shall create any warranty whatsoever. Recommendations for the use of the goods are suggestions only and no directions and Seller makes no express or implied warranties with respect thereto.

EXCEPT AS NOTED AT SECTION 5 ABOVE, THE PARTIES AGREE THAT THERE IS NO WARRANTY OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE OR ANY OTHER WARRANTIES BY SELLER, EITHER EXPRESS OR IMPLIED, OR ANY AFFIRMATION OF FACT OR REPRESENTATION WHICH EXTENDS BEYOND THE DESCRIPTION CONTAINED HEREIN.

7. **PROCEDURE FOR WARRANTY CLAIM:** Any Warranty claim must be presented to Seller in writing within the applicable Warranty period and within two weeks after discovery of the alleged defect, and the notification must describe in reasonable detail the alleged defect. Upon confirmation from Seller that the goods or part thereof is defective and is covered by the Warranty, Buyer must pack and ship the defective part to the facility designated by Seller in accordance with packing instructions provided in the Seller instruction manual for the goods.

8. **REMEDY:** Seller will repair or replace, at its sole option, any defective nonconforming part of the goods that is covered by the Warranty and for which the Warranty procedures have been followed. In the event that Seller elects to replace a defective product or part thereof, the defective product or part thereof shall remain the sole property of Seller. Seller retains the right to replace an original part with a technically similar repaired part.

9. **LIMITATION OF REMEDY:** REPAIR OR REPLACEMENT OF THE DEFECTIVE PRODUCT OR PART THEREOF CONSTITUTES THE SOLE AND EXCLUSIVE REMEDY AVAILABLE TO BUYER IN THE EVENT OF BREACH OF ANY WARRANTY BY SELLER, EXPRESSED OR IMPLIED, OR OF THE AGREEMENT.

10. **LIMITATION OF LIABILITY:** IN NO EVENT SHALL SELLER BE LIABLE FOR INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES (INCLUDING, BUT NOT LIMITED TO, INCIDENTAL OR CONSEQUENTIAL DAMAGES FOR LOST PROFITS, LOST SALES, OR ANY OTHER INCIDENTAL OR CONSEQUENTIAL LOSS) RESULTING FROM SELLER'S PERFORMANCE OR FAILURE TO PERFORM ANY PROVISION OR TERM OF THE AGREEMENT OR IN CONNECTION WITH THE PURCHASE, OPERATION OR USE THE GOODS, WHETHER DUE TO A BREACH OF CONTRACT, BREACH OF WARRANTY, THE NEGLIGENCE OF SELLER, OR OTHERWISE.

11. **LIMITATION OF ACTION:** Any action by Buyer for breach of the Warranty or of the Agreement must be commenced by Buyer within 18 months after the date of shipment of the goods.

12. **ACCEPTANCE:** Buyer shall be deemed to have accepted any and all goods shipped to it unless Buyer shall have notified Seller in writing of any nonconforming goods or defects therein within seven (7) days of receipt of the goods. Both Buyer and Seller acknowledge and agree that a seven-day inspection period is an adequate and reasonable time within which to inspect the goods and to identify nonconforming goods.

13. **DELIVERY:** Shipping and delivery dates set forth herein are approximate, without limitation of the foregoing, shipments received within 30 days after the specified shipment date shall be deemed timely delivery. Seller shall be entitled to make partial delivery of goods to Buyer.

14. **DELAY OR NONPERFORMANCE:** Seller shall not be liable for delay in shipment to any cause beyond its reasonable control, nor shall such delay entitle Buyer to cancel any order or refuse to accept delivery. Seller shall not be liable for failure of delay in shipment or other performance hereunder if such failure is due in whole or in part to strikes, fires, accidents, wars, rebellions, civil commotion or public strike, acts of any government, whether legal or otherwise, acts of public enemies, force majeure, inability to secure or obtain or delay in securing or obtaining transportation, machinery, materials, or sufficient qualified labor, or any other causes beyond Seller's reasonable control.

15. **RISK OF LOSS:** Unless otherwise specifically agreed in writing, risk of loss of the goods shall pass from Seller to Buyer when the goods or any portion thereof, properly packed and secured in such a manner as to reach their destination in good condition under normal conditions of transport, are placed in the possession of the carrier for shipment to Buyer. Seller may choose any reasonable carrier for delivery.

16. **INDEMNITY:** Seller shall, at its own expense, defend any suit that may be instituted against Buyer for alleged infringement of any United States patent or copyrights related to the parts of the goods manufactured by Seller, provided that: (a) Such alleged infringement complaint in the use of only such goods and not as a part of or in combination with any other devices or parts; (b) Buyer gives Seller immediate notice in writing of any such suit and permits Seller, through counsel of its choice, to answer the charge of infringement and defend such suit; and (c) Buyer gives Seller all needed information, assistance and authority, at Seller's expense, to enable Seller to defend such suit. In the case of a final award of damages in any such suit, Seller will pay such award, but shall not be responsible for any settlement made without its prior written approval. This Section states Seller's total responsibility and liability, and Buyer's sole remedy, for any actual or alleged infringement of any patent or copyright by the goods or any part thereof, provided hereunder. In no event shall Seller be liable for any indirect, special, or consequential damages resulting from any such infringement. Notwithstanding the foregoing, with respect to any goods manufactured by Seller to Buyer's design, specification or instruction, Buyer warrants that such goods (including manufacturing processes therefor) do not infringe any proprietary rights of a third party, and Buyer hereby indemnifies an holds harmless Seller from and against any costs, liabilities and expenses (including attorney and expert fees) which result by reason of Seller's manufacture or sale to Buyer of such goods.

17. **PROPRIETARY INFORMATION:** All proprietary information (including without limitation Seller's drawings and specifications for the goods) and other confidential information obtained by Buyer from Seller in connection with the goods shall remain the property of Seller. For a period of five (5) years from the date of disclosure to Buyer, Buyer shall not disclose such proprietary information to any third party or use such information in any way other than as expressly provided by written contract with Seller. Notwithstanding the foregoing, Buyer shall not disclose to third parties or use (other than as permitted by written contract with Seller) information constituting trade secret (as defined under Georgia law) of Seller for so long as such information constitutes a trade secret as so defined.

18. **MODIFICATION:** This Agreement constitutes the entire agreement of the parties with respect to the terms and conditions of the goods specified herein. No modification of this Agreement shall be binding upon the parties unless in writing and signed by the party to be bound. Any terms and provisions contained in any document of Buyer which are inconsistent with the terms and provisions hereof shall not be binding on Seller and shall not be considered applicable to the sale or shipment of the goods.

No agent employee or representative of Seller other than its officers has any authority to bind Seller to any affirmation, representation
or warranty concerning the goods sold under the Agreement and unless an affirmation, representation or warranty made by an agent employee, or representative is specifically included within the Agreement, it has not formed a part of the basis of this bargain and shall not in any way be enforceable.

19. **WAIVER:** Waiver by Seller of a breach by Buyer of any provision of the Agreement shall not be deemed a waiver of future compliance with the provision of the Agreement breached.

20. **ASSIGNMENT:** No rights or interest in this Agreement shall be assigned by Buyer without the written consent of Seller, and no delegation of any obligation by Buyer shall be made without the written permission of Seller. Any attempted assignment or delegation shall be wholly void and totally ineffective for all purposes unless made in conformity with this paragraph.

21. **CONTROLLING LAW:** The validity and interpretation of the Agreement shall be governed by the laws of the State of Georgia.

22. **REQUIRED NOTIFICATION:** Buyer shall give immediate written notice to Seller of any claim or action asserted against Buyer for which Seller is or may be ultimately liable under state or federal law, including without limitation any claim for breach of warranty or for infringement.

23. **JURISDICTION:** Buyer, to the extent it may lawfully do so, hereby submits to the jurisdiction of any state or federal court located in Fulton County, Georgia as well as to the jurisdiction of all courts from which an appeal may be taken from the aforesaid courts for the purpose of any suit, action or other proceeding arising out of any of the Buyer's obligations under or with respect to the Agreement, and Buyer expressly waives any and all objections that Buyer may have as to jurisdiction and/or venue in any of such courts. Buyer further agrees that it may be validly served with any legal process in connection with the foregoing by the mailing of a copy thereof by registered or certified mail in its last address communicated to Seller in writing.